IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY POWELL, SR., )<br>Administrator of the Estate of )<br>TIMOTHY POWELL, JR., deceased, )<br>and KEVIN GEORGE, Administrator of )<br>the Estate of CHAUNEE T. GEORGE, )<br>deceased, )<br>         Plaintiffs )<br>          )<br>   v. )<br>          )<br>CSX TRANSPORTATION, INC., )<br>JOSEPH STACHEWICZ, and )<br>THOMAS SEIFERT, )<br>         Defendants. ) | C.A. No. 22-43 Erie<br><br><br><br>District Judge Susan Paradise Baxter |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

    **A.    Relevant Procedural History**

This personal injury action was initiated by Plaintiffs Timothy Powell, Sr., Administrator to the estate of Timothy Powell, Jr., deceased ("decedent Powell"), and Kevin George, Administrator of the Estate of Chaunee T. George, deceased ("decedent George"), by the filing of two separate complaints in the Court of Common Pleas of Erie County, Pennsylvania, against Defendants CSX Transportation, Inc. ("CSX"), Joseph Stachewicz ("Stachewicz"), and Thomas Seifert ("Seifert"). [ECF No. 1-2, at pp. 58-66 and pp. 72-80, respectively]. The case arises from a violent collision between a motor vehicle operated by decedent George and occupied by decedent Powell and a locomotive owned by Defendant CSX and operated by Defendants Stachewicz and Seifert. The collision occurred on the afternoon of June 26, 2019, at a railroad

1

crossing bisecting Ellis Road in Springfield Township, Erie County, Pennsylvania ("Ellis Road Crossing"). The accident resulted in the deaths of both decedents.

The case was removed to this Court pursuant to a Notice of Removal filed by Defendants on February 11, 2022 [ECF No. 1]. The complaints filed by Plaintiffs are essentially identical. Each contains the same three counts: Count I is a survival action for negligence against Defendant CSX; Count II is a survival action for negligence against Defendants Stachewicz and Seifert; and Count III is a wrongful death action against all Defendants. (ECF No. 1-2, at pp. 62-66, 76-80). As relief for their claims, Plaintiffs seek, *inter alia,* compensatory and punitive damages.

On February 14, 2022, Defendants filed an answer to Plaintiff Powell's complaint, along with a counter claim (incorrectly identified as a "crossclaim") asserting negligence against decedent George [ECF No. 6], to which Plaintiff George filed an answer [ECF No. 29]. Thereafter, on February 22, 2022, Defendants filed an answer to Plaintiff George's complaint [ECF No. 7].

Upon completion of discovery, Defendants filed a motion for summary judgment [ECF No. 85], along with a supporting brief [ECF No. 86], and a concise statement of material facts with attached appendix of exhibits [ECF No. 87]. In their motion, Defendants argue that (1) decedent George was contributorily negligent, thus precluding any recovery for Plaintiffs as a matter of law; (2) Plaintiffs' negligence claims fail as a matter of law to the extent they are based on excessive speed and/or failure to train;[1] and (3) Plaintiff's claims for punitive damages fail as

---

[1] In their opposition brief, Plaintiffs concede that they will not present excessive speed or improper training claims at trial and state that the Court need not rule on these issues. (ECF No. 88, at p. 11). Accordingly, the Court will disregard Defendants' arguments in this regard.

2

a matter of law. Plaintiffs have jointly filed a brief in opposition to Defendants' motion [ECF No. 88] and a response to Defendants' concise statement of material facts, with attached exhibits [ECF No. 89], and Defendants have filed a reply to Plaintiffs' opposition brief. [ECF No. 92]. This matter is now ripe for consideration.

### B. Relevant Factual History[2]

At approximately 1:20 p.m. on June 26, 2019, decedent George was driving north on Ellis Road in a 2009 Toyota Yaris ("Yaris"), in which decedent Powell was the front-seat passenger, when she approached the Ellis Road Crossing. (ECF No. 87, at ¶¶ 2-3). The Ellis Road Crossing was passively controlled by crossbucks, signaling railroad tracks were ahead. (Id. at ¶ 4). Decedent George did not stop her vehicle before driving through the Ellis Road Crossing. (Id. at ¶ 5). As the Yaris began to traverse the Ellis Road Crossing, a train operated by Engineer Defendant Seifert and Conductor Defendant Stachewicz (collectively referred to as "the Crew") was traveling east on the railroad tracks. (Id. at ¶ 7). The Crew was unable to stop the train in time to avoid a collision with the Yaris. (Id. at ¶ 8).

After the collision, the Crew provided written statements. (Id. at ¶ 9). Defendant Stachewicz's written statement provides, in part:

> ... We were going over the crossing at Ellis Road. The engineer was blowing the horn and had the headlights on and a medium size blue car came flying over the crossing. She never looked or stop[ped] and we hit her straight on and dragged the car to the next crossing. We then proceeded to contact the trainmaster and dispatcher.

(Id. at ¶ 10). Defendant Stachewicz adds in his written statement:

---

[2] The factual history set forth herein has been gleaned from Defendant's concise statement of material facts [ECF No. 87], and Plaintiffs' response thereto [ECF No. 89], to the extent the facts set forth in each are unopposed and/or amply supported by the evidence of record.

3

> At 13:20 we were approaching Ellis Road with lights on blowing horn, when a blue vehicle drove right in front of the train and we struck vehicle.

(Id. at ¶ 11). The Crew also spoke with the Pennsylvania State Police's lead investigator for the incident, Trooper Corri Hannon ("Hannon"). (Id. at ¶ 12).

Defendants Stachewicz and Seifert are the only living witnesses to the collision. (Id. at ¶ 20). At his deposition, Defendant Stachewicz testified that decedent George did not make eye contact with the train as she drove over the crossing, and neither one of the Crew saw her face. (Id. at ¶¶ 16, 18; ECF No. 87-1, at pp. 38-39 (internal pp. 33-34)). The Crew also testified that the locomotive horn had been blowing at the time of the incident. (Id. at ¶ 19).

Trooper Hannon testified that, based on her investigation and the statements of Stachewicz and Seifert, she determined that decedent George caused the collision by failing "to stop to make sure that the railroad intersection was clear" and "just went straight over" the tracks, despite the presence of signs at the location. (ECF No. 87-1, at pp. 98-100, 103 (internal pp. 19-21, 25)). The expert report of Defendant's expert, Steven M. Bryan ("Bryan"), confirms that, based on crash data retrieved from the Yaris, Decedent George did not stop her vehicle before the railroad crossing, but merely slowed her vehicle, gradually decreasing the speed from 28.6 miles per hour to 18.6 miles per hour in the four seconds prior to impact. (ECF No. 87, at ¶¶ 13-14; ECF No. 87-1, at p. 118 (internal p. 2)).

## II.    DISCUSSION

### A.    Contributory Negligence of Decedent George

Defendants argue that decedent George's "failure to comply with the stop, look, and listen rule constitutes contributory negligence" which "precludes recovery as a matter of law." (ECF No. 86, at pp. 3-6). Pennsylvania courts have long recognized that one who crosses a railroad grade must stop, look, and listen before entering upon the crossing and must continue to

4

look and listen until having passed over the crossing. Reisburg v. Pittsburgh & Lake Erie Railroad Co., 180 A.2d 575, 578 (Pa. 1962). In Baltimore & O.R. Co. v. Muldoon, 102 F.2d 151 (3d Cir. 1939), the Third Circuit Court recognized:

> No principle is more firmly imbedded in the law of Pennsylvania than that a traveler who is about to cross a railroad track must stop, look and listen. This is an absolute and unbending rule of law. The stopping, looking and listening must not be merely nominal or perfunctory but substantial, careful and adapted in good faith for the accomplishment of the end in view. Failure to comply with the duty is not merely evidence of negligence but is negligence per se, and is to be declared such by the court.

102 F.2d at 152. "This 'unbending' rule of law continues unchanged to this day" and the "failure to comply with any of the three absolutes [stop, look and listen] constitute[s] negligence as a matter of law." Briach v. Pennsylvania Railroad Company, 462 F.2d 266, 269 (3d Cir. 1972) (internal citations omitted).

Here, it is beyond dispute that, at the very least, decedent George failed to stop at the Ellis Road Crossing. Indeed, this fact is admitted by Plaintiffs (ECF No. 89, at ¶¶ 5-6), and was acknowledged by Plaintiff's expert, Eck, at his deposition (ECF No. 92-1, at pp. 11, 27 (internal pp. 37, 101). Thus, it is axiomatic that decedent George's failure to stop at the crossing, alone, rendered her contributorily negligent as a matter of law. However, our finding that decedent George was contributorily negligent as a matter of law does not resolve the question of whether Plaintiffs' claims should be barred based on principles of *comparative* negligence.

As Plaintiffs correctly point out, under Pennsylvania's Comparative Negligence Act, 42 Pa. C.S. § 7102(a), "the fact that the plaintiff may have been guilty of contributory negligence **shall not bar a recovery** by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be **diminished in proportion to the**

5

**amount of negligence attributed to the plaintiff**." Id. (emphasis added). Defendants are entitled to summary judgment only if the facts so clearly reveal that plaintiff's negligence exceeds that of defendants "that reasonable minds could not disagree" as to that fact. O'Brien v. Martin, 838 A.2d 247, 249 (Pa. Super. 1994). However, "[c]omparative negligence is ordinarily an issue for the jury; it is a 'rare situation where it can be said that the plaintiff is more than 50% negligent as a matter of law.'" Bouchard v. CSX Transp., Inc., 196 Fed. Appx. 65, 70 (3d Cir. 1972), citing Gilbert v. Consol. Rail. Corp., 623 A.2d 873, 876 (Pa. Cmwlth. 1993) (citing Peair v. Home Association of Enola Legion No. 751, 430 A.2d 665 (Pa. Super. 1981)).

Here, Plaintiffs cite a number of factors that arguably contributed to decedent George's failure to stop at the crossing, which they attribute primarily to the negligence of Defendant CSX in failing to maintain the Ellis Road Crossing in a safe condition. In particular, Plaintiffs rely on the report of their expert, Ronald Eck, P.E., PhD. ("Eck"), who states, in part, that "due to the wooded areas on both sides of the road, the railroad tracks are not apparent, nor are the crossbucks clearly visible." (Id., citing ECF No. 89-1, at p. 9). In addition, Eck's report notes, *inter alia*, that the advance warning signs were positioned 750 feet in advance of the crossing, five times farther away than the distance recommended by PennDOT's Traffic Engineering Manual; the crossbuck signs were closer to the tracks than the 15 feet recommended by the FHA's Manual on Uniform Traffic Control Devices ("MUTCD"), and were skewed and leaning backwards; no YIELD sign was installed in accordance with the MUTCD; and the road leading to the crossing was unpaved, with excessive stone, potholes, and other surface discontinuities that would tend to divert a driver's attention away from an approaching train. (ECF No. 89-1, at pp. 10-11). Based on these findings, Eck opines that "the failure of the railroad to act to address the safety hazards at this crossing was neither reasonable nor prudent and was a substantial

6

contributing factor in the crash in question and of the fatal injuries sustained by Chaunee George and Timothy Powell." (ECF No. 89-1, at p. 13).

In addition, Plaintiffs have submitted the expert report of Charles Culver ("Culver"), a railroad consultant, who opines that Defendants apparently failed to "sound the horn for a duration of 15-20 seconds on the approach to the Ellis Road crossing," in violation of 49 C.F.R. § 222.21, and Defendant Seifert failed to apply the train's emergency brakes "until about the time of impact." (ECF No. 89-2, at pp. 5-6).

At a minimum, the foregoing expert reports submitted by Plaintiffs raise genuine issues of material fact regarding the comparative negligence of the parties that are best left for a jury to decide. See, e.g., Kroh v. Norfolk Southern Ry. Co., 2008 WL 4820479, at *1 (M.D. Pa. Nov. 3, 2008) (concluding that genuine issues of material fact existed regarding, *inter alia,* when the train operators sounded the train's horn in relation to when they perceived plaintiff's vehicle, the location and extent of vegetation in the area surrounding the site of the collision, and the extent of plaintiff's comparative negligence for failure to stop at the railroad crossing or to look for oncoming trains, which presented factual issues to be resolved by a jury). Accordingly, summary judgment on Plaintiffs' claims will be denied.

**B.     Punitive Damages**

Under Pennsylvania law, an award of punitive damages is justified only where the plaintiff has established that the defendant acted "in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others." Phillips v. Cricket Lighters, 883 A.2d 439, 445-46 (Pa. 2005); see also Boring v. Google Inc., 362 Fed. Appx 273, 282 (3d Cir. 2010) citing Feld v. Merriam, 485 A.2d 742, 747-48 (Pa. 1984) ("Pennsylvania law provides that a defendant must have engaged in 'outrageous' or intentional, reckless or

'malicious' conduct to sustain a claim for punitive damages."). Indeed, "punitive damages are an 'extreme remedy' available in only the most exceptional matters." Phillips, 883 A.2d at 445.

"[W]hen assessing the propriety of the imposition of punitive damages, '[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious.'" Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005), quoting Feld v. Merriam, 485 A.2d 742, 748 (Pa. 1984). A punitive damages claim "must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Luddy, 870 A.2d at 771, citing Martin v. Johns-Manville Corp., 494 A.2d 1088, 1097 (Pa. 1985). "Ordinary negligence, involving inadvertence, mistake or error of judgment will not support an award of punitive damages." Hutchinson v. Penske Truck Leasing Co., 876 A.2d 978, 983-84 (Pa. Super. 2005), citing Martin, 494 A.2d at 1097.

In Pennsylvania, "the question of punitive damages is usually determined by the trier of fact and the Court is to decide the issue only when no reasonable inference from the facts alleged supports a punitive award." Anderson v. National Ins. Enterprise, 187 F.Supp.2d 447, 460 (W.D. Pa. 2002), citing Eagle Traffic Control v. Addco, 889 F.Supp. 200, 201 (E.D.Pa.1995) (citing Trotman v. Mecchella, 618 A.2d 982, 985 (Pa. Super.1992)). However, "courts do indeed dismiss claims for punitive damages in advance of trial." Boring, 362 Fed. Appx at 283, citing, Phillips, 883 A.2d at 445 (reversing a denial of summary judgment as to a punitive damages claim because "[a] showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed"); Feld, 485 A.2d at 748 (holding that submission of punitive damages issue to jury was error).

Here, Plaintiffs' claim for punitive damages is largely based upon the report of Brian Hansen ("Hansen"), one of Plaintiffs' experts, who opines that: (1) Defendant CSX failed to install lights and gates at the Ellis Road Crossing "when it knew or should have known that vegetation made it impossible for a driver using ordinary care to detect the approach of a train prior to entering the [crossing]"; and (2) Defendant CSX failed "to ensure that vegetation was clear cut and maintained to specifications that were the custom and practice in the industry when it knew vegetation near Ellis Road Crossing did not allow proper sight distance down the track for approaching motorists." (ECF No. 88, at pp. 14-15, citing ECF No. 89-3, at p. 21). As Defendants correctly note, however, Hansen's concerns regarding the adverse effect of vegetation on sight distance at the Ellis Road Crossing are debunked by Plaintiffs' own traffic engineer expert, Eck, who testified that sight distance was not a concern at the Ellis Road Crossing; that there was, in fact, good sight distance at the crossing; and that decedent George could have seen the Defendants' train if she turned her head left three seconds before the crossing. (ECF No. 92-1, at pp. 66-67, 99-100).

Based on this record evidence, the perceived failure of Defendant CSX to maintain the vegetation at the Ellis Road Crossing cannot support an award of punitive damages in this case. Moreover, Plaintiffs have failed to point to any other evidence to support a finding that either CSX or the Crew acted outrageously, intentionally, with an evil motive, or with reckless indifference to the rights of others. Thus, Defendants are entitled to summary judgment on Plaintiffs' claims for punitive damages.

An appropriate Order follows.